

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-24-2005

# Hatton v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4185

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Hatton v. Comm Social Security" (2005). *2005 Decisions.* Paper 1141.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1141

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 04-4185

CAROL A. HATTON,
Appellant

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

Appeal from the United States District Court
for the Western District of Pennsylvania
(Civ. No. 04-cv-00313)
District Judge: Hon. Thomas M. Hardiman

Submitted under Third Circuit LAR 34.1(a)
May 5, 2005

Before: McKEE, SMITH and VAN ANTWERPEN,
Circuit Judges

(filed: May 24, 2005 )

OPINION

McKEE, Circuit Judge.

Carol A. Hatton appeals from the district court's order affirming the decision of

the Commissioner of Social Security denying her application for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 401-433. For

the reasons that follow, we will affirm.

1

## I.

Hatton filed an application for DIB on August 23, 2003, alleging that she had been disabled since December 25, 2000 due solely to mental impairments. The state agency denied her application, and Hatton requested an administrative hearing. In her request for a hearing, she again alleged disability based solely on her mental impairments.

After an administrative hearing, an Administrative Law Judge denied Hatton's application, finding that she was not disabled because she could perform a significant number of jobs in the national economy. The ALJ's decision became the final agency decision subject to judicial review when the Appeals Council denied Hatton's request for review. 20 C.F.R. § 404.981.

Having exhausted her administrative remedies, Hatton filed a civil action in the district court. On cross-motions for summary judgment, the district court held that the ALJ's decision was supported by substantial evidence. This appeal followed.

## II.

Our scope of review is limited to determining if the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Monsour Medical Ctr. v. Heckler,* 806 F.2d 1185, 1190 (3d Cir. 1986). The ALJ's decision is the final decision of the Commissioner when the Appeals Council denies a request for review. *Sims v. Apfel,* 530 U.S. 103, 107 (2000). Substantial evidence refers to that evidence that "a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

2

*Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).  It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Ginsberg v. Richardson,* 436 F.2d 1146, 1148 (3d Cir. 1971).

## III.

Because we write only for the parties, we will discuss only the facts that are relevant to our disposition of this appeal.  Hatton's first argument is that the ALJ erred in weighing the medical opinions of record in concluding that she could perform a limited range of medium work.  In particular, she argues that the ALJ failed to give controlling weight to the treatment notes of Keystone Rehabilitation Center and failed to give controlling weight to the opinion of her treating psychiatrist.   We disagree.

The treatment notes of Keystone Rehabilitation Center to which Hatton refers are physical therapy notes of John Bitsko, P.T., from May 8, 2003 through June 3, 2003 which recite that Hatton had difficulty walking and sleeping due to pain.[1]  Hatton contends that the ALJ erred by not giving controlling weight to those notes.  However, a physical therapist is not an acceptable medical source.  20 C.F.R.  404.1513(a). (Acceptable medical sources include licensed physicians, licensed  or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language

---

[1]As noted, Hatton initially alleged disability solely due to mental impairments. Later, however, she complained of back, abdominal or chest pain.

3

pathologists). Consequently, the rules for evaluating acceptable medical source statements do not apply to the physical therapist's notes. 20 C.F.R. § 404.1527(a)(2). Statements from a physical therapist are entitled to consideration as additional evidence, but are not entitled to controlling weight. 20 C.F.R. § 404.1513(d). Here, the ALJ did consider the treatment notes, but she was not required to afford them controlling weight.

Moreover, the statements from the physical therapy notes are simply a recitation of Hatton's own subjective complaints. Bitsko noted that Hatton complained of difficulty standing, walking and sleeping due to pain. He did not clinically observe such difficulty. In his clinical observation, Bitsko reported that Hatton ambulated independently without an assistive device, with an antalgic gait on the left but no trunk rotation. She had no motor or sensory deficit on examination. Even if it is assumed for the moment that Bitsko was an acceptable medical source, a medical source's recitation of subjective complaints is not entitled to any weight. *See* 20 C.F.R. § 404.1527(d)(2) (providing that a physician's opinion must be well-supported by objective medical findings in order to be entitled to weight); *see also Craig v. Chater*, 76 F.3d 585, 590 n.2 (4th Cir. 1996) (holding that a medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report). Therefore, the ALJ was not required to adopt the subjective limitations that Bitsko repeated, but did not observe in his clinical examination.

The ALJ reviewed x-rays and MRIs showing only mild or minimal degenerative

4

changes. She also reviewed clinical examinations showing some limitations but generally normal neurological, motor and sensory function. The ALJ also considered Hatton's disability forms, in which she failed to report any physical impairment at all. Finally, the ALJ evaluated Hatton's daily activities, which included working as a caretaker at least three days a week for a significant portion of the claimed period of disability. Based on these things, the ALJ found that Hatton retained the ability to perform medium work with only occasional postural activities; less than occasional kneeling, crouching, crawling, or squatting; no climbing or stairs; and no pushing or pulling with the left leg. The ALJ's finding as to Hatton's physical limitations was supported by substantial evidence.

Hatton also argues that the ALJ failed to give controlling weight to the opinion of her treating psychiatrist, Emira Zubchevich, M.D. We again disagree. Hatton did not seek any psychiatric treatment until June 2003, eighteen months after the claimed onset of disability. At that time, she saw Dr. Zubchevich complaining of anxiety and depression. Although Hatton had difficulty doing serial sevens, she reported that she could generally concentrate on her reading and daily work. She also had good remote and recent past memory and fair recent memory. Dr. Zubchevich diagnosed a major depressive disorder and concluded that Hatton was unable to adapt in social or occupational activities. She opined that Hatton had moderately impaired daily activities and social functioning and markedly impaired concentration and adaptation.

Hatton did not return for follow-up psychiatric treatment with Dr. Zubchevich until

September 2003. Dr. Zubchevich again concluded that Hatton was unable to work due to a combination of her obesity, pain, limited range of skills and depression. Dr. Zubchevich discharged Hatton from her care and instructed her to pursue counseling closer to home.

However, the record contains two medical opinions contradicting Dr. Zubchevich. On November 18, 2002, Hatton had a consultative psychological evaluation with Michael Crabtree, Ph.D. Hatton denied suicidal thoughts and stated that she used to have problems with sleeping. Hatton had good abstract thinking, average intelligence and good concentration. She had no difficulty performing serial sevens and demonstrated normal memory and judgment on testing. She showed no signs of depression and no high levels of anxiety or stress on clinical evaluation.

Dr. Crabtree opined that Hatton had no diagnosable mental impairment. She was capable of performing her daily activities, including shopping, cooking, cleaning and maintaining a residence. She had very good social functioning and good concentration, persistence, and pace. Dr. Crabtree opined that Hatton had fair ability to understand, remember and carry out detailed or complex instructions. She had at least good, or satisfactory, ability to perform all other work-related activities.

Douglas Schiller, Ph.D., a state agency psychologist, reviewed the evidence of record, including Dr. Crabtree's report, and opined that Hatton had no severe mental impairments.

When "presented with the not uncommon situation of conflicting medical evidence . . . . [t]he trier of fact has the duty to resolve that conflict." *Richardson v. Perales*, 402 U.S. 389, 399 (1971). And, a reviewing court should not re-weigh the medical opinions of record but should consider only whether the ALJ's weighing of such opinions was supported by substantial evidence. *Monsour Medical Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

The ALJ found that Dr. Zubchevich's opinion was not entitled to significant weight for several reasons. First, as noted, her assessment was inconsistent with the opinions of Drs. Crabtree and Schiller. Moreover, Dr. Zubchevich only examined Hatton twice. Thus, Dr. Zubchevich's assessment does not provide the longitudinal picture of Hatton's assessment contemplated by the treating physician regulations. *See* 20 C.F.R. § 404.1527(d)(2)(I) (providing that an ALJ should consider the length of a treating relationship in assessing the weight to be given to a treating medical source's opinion). Second, Dr. Zubchevich's description of Hatton as a person who was virtually incapacitated by her mental impairments is inconsistent with Hatton's almost complete absence of mental health treatment. Prior to seeing Dr. Zubchevich, Hatton relied exclusively on her treating primary care physicians to prescribe anti-depressants or anti-anxiety medications and sought no counseling or evaluation by a mental health professional. Dr. Zubchevich's assessment is inconsistent with the mental status examination of Dr. Crabtree. Dr. Zubchevich's assessment was based largely on Hatton's

7

subjective complaints of mental impairment, which the ALJ found unreliable because they were inconsistent with, *inter alia*, her limited treatment history and her work as a caregiver. Finally, Dr. Zubchevich based her assessment in part on Hatton's subjective physical complaints. However, Dr. Zubchevich never conducted a physical examination of Hatton. Nor is there any record evidence that Dr. Zubchevich reviewed any medical records from a treating physician.

Clearly, the ALJ did not ignore the opinion of Hatton's treating psychiatrist. On the contrary, she gave a detailed analysis of Dr. Zubchevich's assessment and explained the many reasons why she believed that it was not entitled to significant weight. We find that the ALJ's reasoned analysis was supported by substantial evidence.

Hatton's second, and last, argument is that the ALJ's hypothetical question to the vocational expert was improper because it did not include the mental limitations described by Dr. Zubchevich or the physical limitations she alleges. We disagree. The ALJ was not required to incorporate these limitations into her hypothetical because she found that the limitations described by Dr. Zubchevich were not reliable and because the limitations in the physical therapist's report were not medical opinions. Rather, as noted, they were merely notations of Hatton's subjective complaints, and did not come from an acceptable medical source.

**IV.**

For all of the above reasons, we will affirm.